IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-00016-PAB-CBS

WYTHE S. CROWE,

    Plaintiff,

v.

ADT SECURITY SERVICES, INC.,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on defendant's motion for summary judgment [Docket No. 47] and plaintiff's motion for partial summary judgment [Docket No. 48]. The motions are fully briefed and ripe for disposition.

## I. BACKGROUND

Defendant ADT Security Services, Inc. ("ADT") provides electronic security systems and services. In July 1997, plaintiff Wythe Crowe started working in ADT's Aurora, Colorado facility as a technician who provided telephone support to customers and dealers. On July 27, 2007, ADT terminated Mr. Crowe for insubordinate behavior and for violating ADT's harassment and equal opportunity policy. On January 6, 2009, Mr. Crowe filed this lawsuit, alleging that ADT violated Title VII and 42 U.S.C. § 1981 by firing him because he is African-American and in retaliation for complaining that ADT had discriminatory hiring and promotion policies.

In its summary judgment motion, ADT sets forth various incidents that it claims led to plaintiff's termination. On December 1, 2006, a female ADT employee complained to her manager, Leon Hollowell, that Mr. Crowe was looking at her inappropriately. While Mr. Crowe disputes that he did so, he does not dispute that the employee "may have alleged to Mr. Hollowell that Mr. Crowe was sexually harassing her." Pl.'s Resp. [Docket No. 52] at 2, ¶ 3. Mr. Hollowell asked the employee to write a statement, which she did. Mr. Hollowell informed his superior, Unit Manager Heather England, of the complaint against Mr. Crowe, providing a written statement that also included his own observations about Mr. Crowe's conduct. Ms. England reported the complaint to a human resources manager named Rodney Easterling, who spoke with the employee, as well as two potential witnesses to the conduct, about the situation. Mr. Crowe "does not dispute that Mr. Easterling believed [the employee's] allegations were true," but contends that this belief was affected by Mr. Easterling's failure to interview Mr. Crowe before coming to a conclusion. Pl.'s Resp. at 5, ¶ 12.

Sometime in early December,[1] Mr. Crowe and three other employees met with an ADT manager named Michael Hanley to voice their concerns regarding the lack of African-American representation in senior management at ADT, voicing specific complaints about being passed over for promotions. Mr. Easterling and a human resources representative named Tina Laurila investigated the allegation regarding promotions. Mr. Crowe does not dispute that the individuals passed over for promotion

---

[1]Defendant contends the meeting occurred on December 5, 2006. Mr. Crowe disputes when the meeting took place.

ranked lower than the individuals who received the promotions. Nor does he dispute that Ms. Laurila and Mr. Easterling found there was no reason to believe that race was a factor in the promotions.

Mr. Crowe left on vacation on December 6, 2006 and did not return until sometime in January 2007. On or around January 3, 2007, Mr. Easterling received a complaint from one of Mr. Crowe's supervisors. The supervisor told Mr. Easterling that she had asked Mr. Crowe to remove his hat in order to comply with ADT's dress code and that he had not responded promptly and professionally. Mr. Crowe disputes the details of the event, but does not dispute that the complaint was filed.

On January 5, 2007, Mr. Easterling drafted a "final written warning" and planned to present it to Mr. Crowe the following week at a meeting with Jim Mooney, who was a vice president at the Aurora facility. Mr. Crowe does not contest this fact, but rather responds that Mr. Easterling drafted the final written warning without first speaking with him, which is undisputed. Because Mr. Mooney was out of town for much of January, the meeting with Mr. Crowe did not occur until January 30, 2007, at which time Mr. Mooney and Mr. Easterling gave Mr. Crowe a copy of the final written warning. Mr. Crowe returned the final written warning the following day and told Mr. Easterling he would not sign it. He also submitted a memorandum on January 31, 2007 in which he denied the allegations against him.

In May 2007, there were two incidents between Mr. Crowe and a female supervisor named Elaine Trujillo. In the first incident, Ms. Trujillo interrupted Mr. Crowe while he was on the phone with a technician, which upset Mr. Crowe. Ms. Trujillo later

3

contended that she was surprised to find out that Mr. Crowe was upset by the interaction. Mr. Crowe disputes that Ms. Trujillo was unaware he was upset. In the second encounter, which occurred on May 16, 2007, Mr. Crowe indicated to Ms. Trujillo, as she approached him, that he wanted another supervisor to assist him. The next day, Ms. Trujillo supplied Team Manager Guillermo Melendez with a statement about these encounters, identifying another employee as a witness. Also in May 2007, an ADT employee who sat next to Mr. Crowe requested to be relocated. The employee indicated that Mr. Crowe was creating a negative work environment by telling her repeatedly that Ms. England was racist and criticizing Ms. England's management skills.

Sometime after finding out about the May 16 interaction between Mr. Crowe and Ms. Trujillo and around the time the employee requested to be relocated, Mr. Mooney told Ms. Laurila that he was tired of Mr. Crowe's conduct and instructed her to address the situation. Ms. Laurila, who was not familiar with Mr. Crowe's personnel history, began her investigation by reviewing Mr. Crowe's personnel file, which revealed a number of warnings, including multiple final written warnings.[2] During her deposition, Ms. Laurila asserted that, upon reviewing Mr. Crowe's personnel file, she was surprised that he had not been terminated sooner. *See* Docket No. 47-12 at 6; *see also* Docket No. 47-11 (Laurila Decl.) at 3. Mr. Crowe disputes that Ms. Laurila had that reaction, citing a June 28, 2007 email by Ms. Laurila in which she wrote that she "d[idn't] think there is enough documentation to do anything." Docket No. 52-18 at 1. After reviewing

---

[2]Mr. Crowe does not dispute the contents of his personnel file, but rather takes issue with the accuracy of certain allegations found therein.

Mr. Crowe's file, Ms. Laurila spoke to managers who had been involved in some of the documented incidents. These meetings provided Ms. Laurila with additional information regarding Mr. Crowe's alleged conduct and comments. Ms. Laurila, however, never met with Mr. Crowe during her investigation, though she did review a copy of the memorandum he provided to Mr. Easterling on January 31, 2007.

On July 25, 2007, Ms. Laurila presented a report summarizing the results of her investigation to Saundra Stanfield, the Director of Human Resources, in which Ms. Laurila recommended that Mr. Crowe be terminated. Mr. Crowe contends that the report demonstrates that race was considered by Ms. Laurila insofar as she asserted the following: "The ramifications of not terming Wythe Crowe could be huge! Think about this: What if a male exhibits the same harassing, insubordinate, discriminatory, and disrespectful behavior as Wythe has done over the years. If we decide to fire this person, we have now set ourselves up for a reverse discrimination lawsuit." Docket No. 47-11 at 70-71. The report goes on to say that "[f]or that matter, since we have allowed Wythe to exhibit this type of behavior for many years, it does not matter whether the next person is white, yellow, or pink, we are setting ourselves up for a potential lawsuit due to the precedent we have set by allowing Wythe Crowe to continue his employment at ADT." Docket No. 47-11 at 71.

The parties dispute whether Mr. Easterling was involved in Ms. Laurila's investigation of Mr. Crowe. In any event, Ms. Stanfield and Mr. Easterling endorsed the recommendation and received approval from Mr. Hanley to discharge Mr. Crowe. On July 27, 2007, Ms. Stanfield and Mr. Mooney informed Mr. Crowe of his termination.

Mr. Crowe filed this lawsuit on January 6, 2009. Defendant filed its motion for summary judgment and Mr. Crowe filed his motion for partial summary judgment on December 8, 2009. For the reasons that follow, the Court will grant defendant's motion and deny Mr. Crowe's motion as moot.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

### A. Defendant's Motion for Summary Judgment

Mr. Crowe asserts claims of workplace discrimination and retaliation under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq*. ("Title VII") and 42 U.S.C. § 1981. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 2000e-3(a) bans employers from retaliating against an employee because the employee has opposed such unlawful employment discrimination. Mr. Crowe contends that defendant terminated his employment and retaliated against him in violation of Title VII.[3]

Mr. Crowe contends that he "has produced direct evidence of discrimination based on his race and thus does not need to rely on the *McDonnell Douglas* burden shifting analysis," but cites only the section of Ms. Laurila's report where she expresses her concerns regarding potential future lawsuits if Mr. Crowe is retained. *See* Docket No. 52 at 18 (citing Docket No. 52-4). This passage, however, does not constitute direct evidence of race-based discrimination. To the contrary, Ms. Laurila expresses her belief that ADT should *not* consider race in rendering its decision. *See* Docket No. 52-4 at 3-4. Given that the plaintiff cites no other evidence, the Court determines that

---

[3]Mr. Crowe also invokes Section 1981 of Title 42 of the United States Code. The "same standards and burdens apply . . . . to claims brought under 42 U.S.C. § 1981" as Title VII. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 n.3 (10th Cir. 1997).

7

Mr. Crowe has failed to produce any direct evidence that he was terminated because of his race.

The Court now turns to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to determine whether circumstantial evidence of discrimination supports plaintiff's claims. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). First, Mr. Crowe must make out a prima facie case of employment discrimination. *Garrett*, 305 F.3d at 1216. "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citing *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005)).[4] If Mr. Crowe successfully makes out a prima facie case, the burden shifts to ADT to offer a legitimate, nondiscriminatory reason for the adverse action. *Garrett*, 305 F.3d at 1216. If ADT can offer such a reason, Mr. Crowe then must provide evidence showing that

---

[4] *See PVNF*, 487 F.3d at 800 n.5 ("There exists some tension in our case law regarding what a plaintiff must establish as part of his or her prima facie case of discrimination. Some cases treat circumstances suggestive of discrimination as an element of a prima facie case; other cases treat the surrounding circumstances as part of the analytically subsequent inquiry into the employer's stated reason for the challenged action and the plaintiff's opposing demonstration of pretext. *Sorbo*, 432 F.3d at 1173 & n.5 (listing cases). Regardless of whether we analyze the plaintiff's evidence 'in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result.' *Id.* at 1173.").

race was "a determinative factor in the defendant's employment decision, or show that the defendant's explanation for its action was merely pretext." *Id.*

There is no dispute that Mr. Crowe, who is African-American, belongs to a protected class and that he suffered an adverse employment action. Therefore, to make out a prima facie case, Mr. Crowe must identify evidence that ADT's conduct "took place under circumstances giving rise to an inference of discrimination." *PVNF*, 487 F.3d at 800. He has failed to do so. Nothing in the record supports an inference that ADT terminated Mr. Crowe because of his race as opposed to terminating him for other non-discriminatory reasons.

The Court also finds that plaintiff has failed to make out a prima facie case of retaliation. To make out a prima facie case of retaliation, a plaintiff must establish three elements: "'(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action.'" *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1264-65 (10th Cir. 2007) (citation omitted). Mr. Crowe has identified no evidence upon which a jury could conclude that his termination in July 2007 was in any way connected to his December 2006 meeting with Mr. Hanley or any other protected conduct. *See Conner v. Shnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (stating that a causal connection "may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action" and that "[u]nless the termination is very closely connected in time to the protected conduct, the plaintiff

will need to rely on additional evidence beyond temporal proximity to establish causation") (quotations and citations omitted). In short, nothing in the record supports an inference that ADT treated him differently because of his race or because he engaged in protected activity.

Moreover, even if the Court got to the next steps in the *McDonnell Douglas* burden-shifting framework, plaintiff's case would not survive defendant's summary judgment motion. ADT has offered a legitimate, nondiscriminatory reason for terminating Mr. Crowe, a point plaintiff does not dispute. Mr. Crowe does, however, argue that ADT's proffered reason is a pretext for discrimination and retaliation. A plaintiff "can show pretext by revealing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Garrett*, 305 F.3d at 1217 (citation omitted).

Mr. Crowe claims that pretext is evidenced by "Defendant's statements about race when determining to terminate Mr. Crowe." Pl.'s Resp. at 19. These statements relate to Ms. Laurila's July 25, 2007 report, which does not support any inference of terminating him due to his race. Mr. Crowe also contends that pretext is demonstrated by the fact that he was given pay raises shortly after allegedly violating ADT policy. *Id.* Mr. Crowe contends that he "received numerous promotions and merit pay increases . . . ." Pl.'s Resp. at 10, ¶ 39. The only evidence he supplies, however, are performance reviews indicating that he "me[t] expectations" and received pay raises, such as a $1.62

per hour pay raise in 1999. *See* Docket No. 52-17; *see also* Docket Nos. 52-22, 52-23, 52-24. There is virtually no other information on the performance review forms supplied by plaintiff. Nothing in the forms contradicts ADT's stated reason for firing plaintiff, i.e. insubordination and harassment. Nor do the performance reviews relate in time to the events in late December 2006 through May of 2007 which ultimately precipitated Mr. Crowe's termination. *See Ezold v. Wolf, Block, Schorr and Solis-Cohen*, 983 F.2d 509, 528 (3rd Cir. 1992) ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations") (citing, *inter alia*, *Frieze v. Boatmen's Bank*, 950 F.2d 538, 541 (8th Cir. 1991) ("An employer rating an employee as competent discredits the employer's stated reason for discharging the employee . . . only when the employer's stated reason is the employee's *general* incompetence.") (emphasis in *Ezold*).

Mr. Crowe also cites the fact that "Ms. Laurila first conclud[ed] that there was not enough documentation to terminate Mr. Crowe on June 26, 2007 but then recommend[ed] his termination on July 26, 2007 '[d]ue to the January 2007 Final Written Warning on Professionalism/Harassment, contributing to a hostile work environment.'" Pl.'s Resp. at 19. The record is clear that Ms. Laurila believed Mr. Crowe should be terminated in light of the information she received during her investigation. Mr. Crowe correctly points out that Ms. Laurila expressed concern regarding the sufficiency of the documentation of the complaints against him. He, however, does not identify any evidence to indicate that Ms. Laurila's basis for recommending his termination was anything other than the complaints against him. In

fact, "[p]laintiff does not dispute that Ms. Laurila found the information [she received from] the people she interviewed to be true." Pl.'s Resp. at 11, ¶ 47.

Moreover, there is no evidence that anyone else involved in the decision to terminate Mr. Crowe, including Mr. Mooney, "the leading advocate for termination of Mr. Crowe," Pl.'s Resp. at 12, ¶ 56, believed the complaints to be insufficient to warrant Mr. Crowe's termination or that they were not the real basis for their opinion that he must be fired. In fact, Mr. Crowe contends that Mr. Mooney wanted to terminate Mr. Crowe because two of the supervisors with whom Mr. Crowe had difficulty were too valuable to lose. *See* Docket No. 52 at 12, ¶ 56 ("Mr. Mooney did not want the Defendant to conduct a proper investigation because he felt Ms. England and Ms. Hofslien were 'too valuable' to ADT 'to drag [the investigation] out any longer.'") (citation omitted). Although Mr. Crowe has identified this as Mr. Mooney's motivation, he asserts that defendant terminated him because he complained to an ADT manager in early December 2006 about discrimination in promotion and because he contacted ADT's diversity officer with a similar complaint. He does not, however, indicate that these were the reasons Mr. Mooney wanted him terminated. Nor does he identify evidence that any other decision maker was motivated by these factors in terminating him.

Mr. Crowe references the following passage from Ms. Laurila's deposition testimony:

> Q. . . . Now, it says that Mr. Crowe was being terminated due to a violation of the harassment policy; is that right?
> A. Yes.
> Q. Who did he harass?
> A. The managers.
> Q. Which managers?

A. The white females.

Docket No. 52-3 at 7-8.  The "white females" she refers to are apparently Sherry Hofslien and Heather England.  *See* Docket No. 52-3 at 8.  Although her testimony is not entirely clear on this point, Ms. Laurila then recalls two additional managers, an African-American woman and a Hispanic woman, she believes were harassed by Mr. Crowe.  *See* Docket No. 52-3 at 8 ("I want to add one more manager to the harassing, was Ilish[i]a Norris.  It would have been Trujillo."); Docket No. 47-5 (Norris Decl.) at 2; Docket No. 47-6 (Trujillo Decl.) at 2.  ADT's proffered reason for terminating Mr. Crowe was his treatment of co-workers, particularly female supervisors.  Ms. Laurila's testimony confirms that fact.  Although it is not entirely clear why Ms. Laurila referenced the race of certain alleged victims of harassment during her deposition, Mr. Crowe does not explain how her doing so "reveal[] 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason.'" *Garrett*, 305 F.3d at 1217 (citation omitted).

Mr. Crowe also contends that pretext is shown by "Ms. Laurila listing 23 discipline actions in her memorandum recommending Mr. Crowe's termination but now claiming, in her declaration dated December 4, 2009 . . ., to consider only 15 alleged incidents."  Pl.'s Resp. at 19-20.  First, her declaration lists eleven documents, "among other things," that she found in Mr. Crowe's personnel file.  Docket No. 47-11 at 2, ¶ 5.  Later in the declaration, she lists fifteen documents, "[i]n addition to the disciplinary

13

documents [she] found in [Mr. Crowe's] personnel records," upon which she relied in making her recommendation. Docket No. 47-11 at 4. Mr. Crowe does not explain, and the Court does not see, how these declarations evidence pretext.

Finally, the Court notes that the only factual disputes Mr. Crowe identifies are immaterial. For instance, Mr. Crowe disputes the accuracy of the complaints against him, arguing that the evidence upon which ADT relied was not provided under oath and constitutes hearsay. *See, e.g.*, Docket No. 52 at 4, ¶ 10. The complaints are not hearsay, as the truth of the allegations is not at issue. Rather, the question is whether the individuals at ADT who received the complaints believed them or, rather, used them as a pretext for discrimination. *See Kaur v. New York City Health and Hospitals Corp.*, 688 F. Supp. 2d 317, at 323 (S.D.N.Y 2010) (finding that personnel documents were not hearsay because they were "being offered to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff" and that "the truth of the assertions in the documents is irrelevant"); *Wright v. Columbia Women & Children's Hosp.*, 34 F. App'x 151, 2002 WL 495325, at *3, n.15 (5th Cir. March 18, 2002) ("Wright is not correct that Willis's statement about complaints from doctors is hearsay. Evidence of the complaints is not being offered to show the truth of the content of the complaints, but rather to show that Willis thought Wright would have trouble interacting with doctors, a necessary function of the new management position."). Mr. Crowe does not dispute that Mr. Easterling and Ms. Laurila believed the allegations to be true. *See* Docket No. 52 at 5, ¶ 12 & 11, ¶ 47. Nor does he offer any evidence upon which a jury could conclude that anybody else involved in the decision to

terminate Mr. Crowe disbelieved the allegations or otherwise sought his termination because of his race or because he voiced a complaint to Mr. Hanley.

Plaintiff has failed to identify any genuine disputes of material fact requiring resolution by a jury. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's claims of discrimination and retaliation.

### B. Plaintiff's Motion for Partial Summary Judgment

Mr. Crowe's motion seeks summary judgment on certain of defendant's proffered defenses. In light of the foregoing, Mr. Crowe's request is moot.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's motion for summary judgment [Docket No. 47] is GRANTED. It is further

**ORDERED** that plaintiff's motion for partial summary judgment [Docket No. 48] is DENIED as moot. It is further

**ORDERED** that judgment shall enter in favor of defendant and against plaintiff on all claims. Defendant may have its costs by filing a bill of costs within fourteen days of the date of this order.

DATED June 30, 2010.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge